# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

SUZETTE WOOD, DENISE ASH,
EDWARD KORBINSKI, DENISE
PROUGH, EDDIE BABCOCK,
RUSSELL RULASON, TINA
WHITE, DAVID BRYANT, and
BARBARA KING,   CASE NO. 1:15-CV-14204

*Plaintiffs*,

DISTRICT JUDGE THOMAS L. LUDINGTON
*v.*   MAGISTRATE JUDGE PATRICIA T. MORRIS

MIDLAND FUNDING, CO., LLC,
and WELTMAN, WEINBERG &
REIS, CO., L.P.A.,

    *Defendants*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON DEFENDANTS' MOTIONS TO DISMISS
### (Docs. 15, 17)

### I. Recommendation

Plaintiffs have brought suit against Defendants under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* For the reasons stated below, I recommend **GRANTING IN PART Defendants' motions to dismiss. i.e., granting them as to Plaintiff Wood only.** (Docs. 15, 17).

### II. Background and Arguments

Plaintiffs' amended complaint alleges that Defendant Midland Funding ("Midland") regularly purchases unpaid consumer debt for collection and is engaged in

1

the business of debt collection within the State of Michigan and is therefore a debt collector under the FDCPA. (Doc. 14 at ID 142.) The complaint also alleges that Defendant Weltman, Weinberg & Reis ("WWR") is a law firm engaged principally in the business of debt collection in the State of Michigan and thus is a debt collector under the FDCPA as well. (*Id.*) In addition, the complaint charges that "Midland had reason to know of the actions of WWR and is vicariously liable to Plaintiffs for those actions. WWR is vicariously liable for the acts of the attorneys it employees [sic]." (*Id.*)

Plaintiffs' amended complaint alleges the following Counts: (1) false statements made in connection with collection of debts under the FDCPA based on the fact that WWR attorneys "submitted motions for alternate service on State Court Administrator's Office approved forms titled 'Motion and Verification for Alternate Service' (hereafter form MC 303)," which required the attorney to verify that service of process "'cannot reasonably be made as otherwise provided in MCR 2.105'" attaching "verification from private process servers contracted by Defendants claiming they had made various visits to Plaintiffs' residences in unsuccessful attempts to deliver a summons and a copy of the complaint to each Plaintiff personally" even though "there was no evidence that service of process by registered or certified mail had been attempted; that the postal addresses of the Plaintiffs herein were unknown; or that there was any unreasonable impediment to service by registered or certified mail" (Doc. 14 at ID 144-45); (2) violations of the FDCPA by WWR attorneys who prepared and submitted orders for publication/posting (form MC 307) that stated the names, addresses, and amount of debt owed that were executed and published in local newspapers citing §§ 1692b(2), 1692c(b), 1692d,

2

1692d(3), 1692e(2), 1692e(7) and 1692e(11)(A) (Doc. 14 at ID 146-51); and (3) "state common law tort of 'False Return' causing severe imotional [sic] distress. (Doc. 14 at ID 151-53.)

District Judge Thomas L. Ludington referred the case to the undersigned for full pretrial case management. (Doc. 5.) Defendant WWR filed a motion to dismiss, (Doc. 15,) Defendant Midland Funding joined and concurred in Defendant WWR's motion to dismiss, (Doc. 17,) Plaintiffs responded, (Doc. 19,) WWR replied, (Doc. 20,) and Plaintiffs were provided with an opportunity to file a sur-reply and the sur-reply was filed. (Doc. 21.) With briefing concluded, the case is ready for Report and Recommendation.

### III. Analysis

#### A. Motion to Dismiss Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and will be granted if the plaintiffs have failed "to state a claim upon which relief can be granted . . . ." "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). But the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," otherwise the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)." *Id.* at 555. (citations omitted). The complaint must include more than "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action . . . ." *Id.* When a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

Because the dismissal standard scrutinizes the pleadings, the Federal Rules limit courts' consideration of extraneous materials at this stage. Rule 12(d) provides the operative language: "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The "pleadings" the rule refers to are seven narrow classes of documents defined in Rule 7(a), including the complaint. Rule 10(c) states that a written instrument attached to a pleading as exhibits "is a part of the pleading for all purposes."

In addition, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting

*Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Industries–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (finding that the consideration of other materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, and added nothing new" did not convert motion to dismiss into motion for summary judgment). Thus, the Court can consider the exhibits to Plaintiffs' complaint.

### B. Application and Analysis

The facts are largely undisputed. WWR represents Midland in lawsuits against Plaintiffs on consumer debts they owed to Midland. (Doc. 15 at ID 1663.) The lawsuits were filed by WWR in the 82nd District Court of Michigan against the various individual Plaintiffs. (Doc. 14 at ID 143.) In each of the lawsuits, WWR submitted motions for alternate service of process, the Orders were signed by the state judge, and affidavits of publication were executed (but not all were filed with the court). (*Id.*, Exs. A-J.) In seeking alternate service, WWR submitted statements that "private process servers contracted by [WWR] had made various visits to Plaintiffs' residences in unsuccessful attempts to deliver a summons and copy of the complaint to each Plaintiff personally." (Doc. 14 at ID 144-45.) At the time these certified statements were made, "there was no evidence that service of process by registered or certified mail had been attempted; that the postal addresses of the Plaintiffs herein were unknown; or that there was any unreasonable impediment to service by registered or certified mail." (Doc. 14 at ID 145.) Plaintiffs further contend that the statements made on the form are false because they indicate that diligent attempts to serve process were made and imply that Plaintiffs were

attempting to evade service despite the fact that service by registered or certified mail had not been attempted. (Doc. 14 at ID 145-46.) Based on the forms and proposed orders WWR submitted, the 82nd District Court issued orders for alternate service by publication/posting and notice of action directing that a copy of the order be published for three consecutive weeks in the relevant local papers. (Doc. 14 at ID 147.)

Since Defendant Midland concurs in Defendant WWR's motion, I will consider WWR's arguments as the arguments of both Defendants. (Docs. 15, 17.)

Defendants argue that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine, are barred by principles of *res judicata* and collateral estoppel, and fail as a matter of law because Michigan Court Rule 2.105(1) provides a Michigan court with discretion to order alternate service of process, and the Michigan court ordered alternate service in this matter. (Doc. 15.)

Plaintiff counters that *Rooker-Feldman* does not apply because "there is no showing that the plaintiffs ever had a 'reasonable opportunity' to raise their federal grounds in state court" and because the "filing of false certificates was, in each instance, complete before the state court took any action." (Doc. 19 at ID 275-76.)

### 1. *Rooker-Feldman*

Under the *Rooker-Feldman* doctrine, lower federal courts cannot overturn state court orders or review state court decisions if the federal issues are "'inextricably intertwined'" with the state court judgment. *McCormick v. Braveman*, 451 F.3d 382, 390 (6th Cir. 2006) (quoting *District of Columbia Court of Appeals. v. Feldman*, 460 U.S. 462, 486-87 (1983)). The analysis asks if the plaintiff is "'complaining of an injury

caused by the state-court judgment and seeking review and rejection of that judgment.'" *Id.* at 391 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)) (emphasis omitted); see also *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012) ("The determination of whether a federal claim is "inextricably intertwined" hinges on whether it alleges that the supposed injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy.").

In the underlying collection case filed by Defendant Midland against Plaintiff Wood in the 82nd District Court of Michigan, Wood filed an ex parte motion to vacate the order for publication. (Doc. 14 at ID 168, Ex. A.) Plaintiff made the same arguments as those raised here, i.e., that the motion for alternate service was improperly filed since service via registered or certified mail was never attempted nor would it be futile. (Id.) Plaintiff Wood argued that the 82nd District Court of Michigan abused its discretion in ordering alternate service by publication, the state court agreed and issued an order vacating the order for publication. (Doc. 14 at ID 168-69, Ex. B.) Plaintiff Wood then filed a complaint for superintending control over the judge of the 82nd District Court of Michigan, alleging a continuing practice to issue orders for alternate service in violation of the relevant court rule. (Doc. 14 at ID 169, Ex. C.) In October 2015, Wood filed a motion for summary disposition as to her complaint for superintending control which was denied by the Roscommon County Circuit Court in November 2015 when the Circuit Court granted summary disposition in favor of the 82nd District Court and dismissed the case. (Doc. 14 at ID 170-71, Ex. F.)

I find that the underlying state court actions, both the collection action by Midland against Plaintiff Wood and the superintending control action by Plaintiff Wood against the 82nd District Court, are not inextricably intertwined with the instant action. Instead the instant federal claims under the FDCPA assert an injury not addressed by the state court and one which would not undermine any of the state court rulings or judgments. I therefore find that the instant case is not barred by *Rooker-Feldman*.

### 2. *Res judicata* and collateral estoppel

WWR also argues that the case is barred by *res judicata* and collateral estoppel. (Doc. 14 at ID 178.) *Res judicata* represents "'a rule of fundamental and substantial justice'" seeking to provide a clear and binding end to litigation. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981) (quoting *Hart Steel Co. v. R.R. Supply Co.*, 244 U.S. 294, 299 (1917)). It encompasses two related concepts: true *res judicata*, or claim preclusion, and collateral estoppel, also called issue preclusion.[1] *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984); *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 745 n.4 (6th Cir. 2002). Put simply, the difference between the two is that "[t]he former precludes entire claims, the latter relitigation of specific issues." *Miller v. Runyon*, 77 F.3d 189, 194 (7th Cir. 1996).

In Michigan, *res judicata* "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their

---

[1] The interchangeable vocabulary has caused "perennial confusion," according to the Sixth Circuit. *Heyliger v. State Univ. & Comm. College Sys. of Tenn.*, 126 F.3d 849, 852 (6th Cir. 1997). To clear up matters, the Circuit has "'expressed [its] hope that future litigants, in the interests of precision and clarity, will formulate arguments which refer solely to issue or claim preclusion and which refrain from using the predecessors of those terms.'" *Id.* (quoting *Barnes v. McDowell*, 848 F.2d 725, 728 n.5 (6th Cir. 1988)).

8

privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. Michigan*, 470 Mich. 105, 125 (2004). Michigan only bars a subsequent action if the claims arise from the "same transaction" as those of the first. *Id.* There must be a connection, or sufficient relationship, between the claims raised in the different suits—such as a continuing pattern or course of conduct—for the former action to preclude the latter. *See, e.g.*, *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 817 (6th Cir.2010) ("[U]nder Michigan law, a plaintiff has a duty to supplement her complaint with *related factual allegations* that develop 'during the pendency of' her state suit or have them barred by *res judicata*.") (emphasis added); *Dubuc,* 312 F.3d at 751 ("When, as here, it is obvious that *the alleged ongoing retaliation is actually the defendant continuing on the same course of conduct,* which has previously been found by a court to be proper, a subsequent court must conclude that the plaintiff is simply trying to relitigate the same claim.") (emphasis added).

The court must ask whether "a single group of operative facts give[s] rise to the assertion of relief." *Adair,* 470 Mich. at 124, (citation and quotation marks omitted). In *Adair,* the Michigan Supreme Court explained, "'Whether a factual grouping constitutes a transaction for purposes of *res judicata* is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation,* and whether they form a convenient trial unit.'" 470 Mich. at 125 (quoting 46 Am.Jur.2d, Judgments 533, p. 801). Therefore, the transactional approach does not require the plaintiff to bring all claims it has against a defendant that may accrue before entry of final judgment, only those that are factually related. *Banks v. Lab Lansing Body Assembly,* 271 Mich. App.

227, 231-32, 720 N.W.2d 756 (2006) (cautioning against conflating the phrase "claims arising out of the same transaction" with "all claims that accrue before entry of a final award"); *see also Elder v. Harrison Twp.,* 786 F.Supp.2d 1314, 1327 (E.D. Mich. 2011) (*res judicata* bars claims arising from the same transaction, not all claims that accrue before entry of final judgment).

In the instant case, I suggest that Plaintiffs' claims under the FDCPA arise out of the same transaction that gave rise to the state court action and could have been raised therein. The state court case was focused on vacating the order for publication based on the same arguments as those raised here, i.e., that the motion for alternate service was improperly filed since service via registered or certified mail was never attempted nor would it be futile. (Doc. 14 at ID 168, Ex. A.) The instant federal case adds only another argument for contending that the motion for alternate service was improperly filed, i.e., that the statements made in the motion were not only false but also violated the FDCPA. Even without the FDCPA argument, the 82nd District Court of Michigan was convinced of the impropriety of the order and vacated it. (Doc. 14 at ID 168-69, Ex. B.) It is the exact same transaction, i.e., the motion for alternate service and its effects, that form the basis for the instant lawsuit under the FDCPA. I note that Plaintiff Wood did argue that the 82nd District Court facilitated violations of the FDCPA in her suit for superintending control of the state court but she did not specifically allege claims under the FDCPA. (Doc. 15, ID 182, Ex. C.) I further suggest that Defendant Midland and Defendant WWR are alleged to be privies since WWR acted as an agent of Midland and since neither Defendant has denied the agency relationship.

10

However, the prior lawsuit involved only Plaintiff Wood. Thus, the element requiring the prior action to have involved the same parties or their privies can only be met as to Plaintiff Wood and not the other Plaintiffs. *Adair,* 470 Mich. at 125. I therefore find that *res judicata* bars Plaintiff Wood's claims but not the other Plaintiffs.

Next, I consider whether issue preclusion or collateral estoppel applies to the remaining Plaintiffs. Under Michigan law, "[a] court must apply issue preclusion when (1) the parties in both proceedings are the same or in privity, (2) there was a valid, final judgment in the first proceeding, (3) the same issue was actually litigated in the first proceeding, (4) that issue was necessary to the judgment, and (5) the party against whom preclusion is asserted (or its privy) had a full and fair opportunity to litigate the issue." *United States v. Dominguez*, 359 F.3d 839, 842 (6th Cir. 2004) (citing *People v. Gates*, 434 Mich. 146, 148, 452 N.W.2d 627, 630-31 (1990)). Since the FDCPA issues were not necessary and were not actually litigated, I suggest that issue preclusion would not preclude consideration of the claims as to any Plaintiffs.

### 3. Merits – Plaintiffs other than Wood

Plaintiffs specifically aver that Defendants violated § 1692b(2) "by stating that Plaintiffs owe a debt in communications with other persons while seeking location information." (Doc. 14 at ID 150.) § 1692b(2) states that "[a]ny debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt." Plaintiffs also aver a violation of § 1692c(b) when Defendants "communicat[ed]

with a third party to the debt without permission from the Plaintiffs or legal justification and without express permission of a court of competent jurisdiction not obtained by fraud." (Doc. 14 at ID 150.) § 1692c(b) provides that "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector" "without prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy[.]" Plaintiffs also aver Defendants violated § 1692d "by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." (Doc. 14 at ID 150.) Plaintiffs also charge that Defendants violated § 1692d(3) by "publishing names of multiple individuals in issues of the local newspapers as consumers who allegedly refuse to pay their debts." (Doc. 14 at ID 150.) § 1692d(3) states that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt . . . [including] [t]he publication of a list of consumers who refuse to pay debts, except to a consumer reporting agency . . ."

Plaintiffs also allege a violation of § 1692e(2)(A) because some publications were "misrepresenting that Midland Funding, LLC was suing to collect debts alleged to be due another when the actual pleadings in those cases allege that the debt is owed to Midland Funding, LLC." (Doc. 14 at ID 150.) § 1692e(2)(A) provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the

collection of any debt . . . [including] [t]he false representation of (A) the character, amount, or legal status of any debt . . . ." Plaintiffs aver that § 1692e(7) was violated by Defendants "falsely representing to the state court that the Plaintiffs were evading service of process in order to disgrace the Plaintiffs." (Doc. 14 at ID 151.) § 1692e(7) states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt . . . [including] [t]he false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer."

Finally, Plaintiffs aver a violation of § 1692e(11) "as the publications failed to disclose they were from a debt collector; were communications directed to the consumer; and not in a formal proceeding." (Doc. 14 at ID 151.) § 1692e(11) states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt . . . [including] [t]he failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal proceeding made in connection with a legal action."

All the above provisions of the FDCPA apply only to conduct of debt collectors. The "FDCPA's definition of 'debt collector' excludes 'any person while serving or attempting to serve legal process on any person in connection with the judicial

enforcement of any debt.'" *Blaxill v. Arrow Financial Services, LLC*, No. 5:10-CV-04520, 2011 WL 1299350, at *3 (N.D. Cal. Apr. 4, 2011) (dismissing claim asserting a violation of § 1692b(2) based on substituted service of process on plaintiff's neighbor).[2]

However, a person "who goes beyond being merely a messenger in serving legal process and engages in prohibited abusive or harassing activities to force an individual to repay a debt is no longer exempt under the legal process server exemption." *Flamm v. Sarner & Associates, P.C.*, No. 02-4302, 2002 WL 31618443, at *5 (E.D. Pa. Nov. 6, 2002), *cited with approval in Freeman v. ABC Legal Services, Inc.*, 827 F.Supp.2d 1065, 1072 (N.D. Cal. 2011).

For example, a person who engages in the practice of "sewer service," i.e., claims he had affected personal service and files a false proof of service, also forfeits the process server exemption. *Freeman*, 827 F.Supp.2d at 1074; *Holmes v. Elec. Document Processing, Inc.*, 966 F.Supp.2d 925, 932-33 (N.D. Cal. 2013) (noting that even execution of one false proof of service is sufficient to forfeit the exception from liability). A false proof of service of process not only removes a defendant from the process server exception and renders him a debt collector, it also constitutes an abusive or harassing practice under the FDCPA. *Freeman*, 827 F.Supp.2d at 1075-76; *Sykes v. Mel Harris & Assocs.,* 757 F.Supp.2d 413, 424 (S.D.N.Y. 2010).

In addition, persons who prepare documents to be served are not entitled to the protection of the process server exception.

---

[2] The court disagreed with Defendant's argument that *Rooker-Feldman* or *res judicata* barred the claim because the state court did not decide whether service was proper. Instead, the court found Plaintiff failed to state a claim as indicated above.

> By exempting from liability under the FDCPA those individuals whose involvement in a debt collection communication was limited to serving the communication on the consumer – in effect, to being messengers – Congress did not compromise the strength of the FDCPA's protections. To read Congress, instead, as having carved out a wholesale exemption for anyone who prepares a communication – no matter how violative of the safeguards that the FDCPA affords debtors – just because the communication is eventually served on the consumer as a prerequisite to beginning a court proceeding, would not only stretch the statutory language; it would also significantly impede the statute from remedying the 'mischief' to which it was addressed.

*Romea v. Helberger & Associates*, 163 F.3d 111, 117 (2nd Cir. 1998) (holding that drafter of notice to a tenant of what must be done to forestall a summary proceeding was not entitled to the protection of the process server exception).

In the instant case, Plaintiffs aver that at the time WWR made certified statements for alternate service of process "there was no evidence that service of process by registered or certified mail had been attempted; that the postal addresses of the Plaintiffs herein were unknown; or that there was any unreasonable impediment to service by registered or certified mail." (Doc. 14 at ID 145.) Plaintiffs further contend that the statements made on the form are false because they indicate that diligent attempts to serve process were made and implying that Plaintiffs were attempting to evade service despite the fact that service by registered or certified mail had not been attempted. (Doc. 14 at ID 145-46.) These alleged falsities in preparing the communication for service of process would thus not be entitled to protection under the service of process exception. *Andrews v. South Coast Legal Servs.*, 582 F.Supp.2d 82, 89 (D. Mass. 2008) (denying motion to dismiss where plaintiff "alleged that the defendants prepared false and misleading documents" in securing a writ of execution to seize personal property

removing defendants from the protection of the process server exception). I therefore would recommend that Plaintiffs other than Wood have sufficiently stated claims against WWR.

As to Midland's liability for the actions of WWR, vicarious liability is appropriate in some circumstances under the FDCPA, but not where the person to be held liable is not a debt collector himself. *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996) ("We do not think it would accord with the intent of Congress, as manifested in the terms of the Act, for a company that is not a debt collector to be held vicariously liable for a collection suit filing that violates the Act only because the filing attorney is a 'debt collector.'") However, vicarious liability may be appropriate where both parties are debt collectors. *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir. 1994) (debt collection company could be liable for acts of its attorney where both were considered debt collectors under the FDCPA). "The rationale behind vicarious liability in this context is that if an entity is a debt collector and hence subject to the FDCPA, it should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf." *Freeman,* 827 F.Supp.3d at 1076 (finding vicariously liability established sufficiently on a showing that both attorney and company are debt collectors for purposes of a 12(b)(6) motion to dismiss). In the instant case, Plaintiffs have alleged and the parties have not disputed that Midland and WWR are both debt collectors. I therefore would recommend that claims by Plaintiffs other than Wood against Midland be allowed to proceed under vicarious liability for the actions of WWR.

**IV.   Conclusion**

For the above reasons, I suggest that the motions to dismiss be granted in part and denied in part because *res judicata* bars Wood's Complaint against both Defendants but neither *res judicata* nor collateral estoppel bar the other Plaintiffs' actions and the other Plaintiffs have stated a potential claim for relief.

**V.   Review**

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140, 155; Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. Willis v. Sec'y of Health & Human Servs., 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party

may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 15, 2016                     S/ PATRICIA T. MORRIS
                                        Patricia T. Morris
                                        United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: June 15, 2016                     By s/Kristen Krawczyk
                                        Case Manager